UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFREY PLACE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:15-cv-01147-JAR |
| ) | |
| CINDY GRIFFITH, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Jeffrey Place's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1). The State responded (Doc. No. 7), and Petitioner filed a traverse (Doc. No. 11). For the following reasons, Petitioner's petition is **DENIED** and this action is **DISMISSED**.

**I.    Background**

The Missouri Court of Appeals summarized the evidence regarding this case as follows:[1]

On September 8, 2007, [Petitioner] and his wife, M.P., left a party after [Petitioner] became upset at a comment made by someone at the party. On the way home, [Petitioner] accused M.P. of having an affair and punched her in the face three times and slammed her head into the dashboard of the vehicle. [Petitioner] then choked M.P. until she lost consciousness. M.P. regained consciousness and attempted to exit the vehicle but [Petitioner] pulled her back into the vehicle, slammed her head against the dash board again and then choked her until she lost consciousness again.

M.P. regained consciousness in the driveway of their home and went inside the home to use the telephone. M.P. went back outside and saw [Petitioner] exit the garage of the home wearing a bullet-proof vest and armed with a shotgun, a handgun and an AK-47 machine gun. M.P. got into her van and called the police. [Petitioner] threatened to kill

---

[1] The state court's factual findings are presumed to be correct, and Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

1

M.P. if she did not get out of the van and told her that she better not be calling the police. M.P. exited the van and persuaded [Petitioner] to put his guns down on the front porch.

After [Petitioner] put the guns down, he began pushing M.P. across the front yard at which time Jefferson County Sheriff s Deputy Carl Beier ("Deputy Beier") arrived at the home. M.P. ran toward Deputy Beier and told him [Petitioner] had weapons in his possession. Deputy Beier retrieved a shotgun from the trunk of his patrol car after he saw [Petitioner] pick up the AK-47 from the front porch. Beier took cover behind a tree and lost sight of [Petitioner].

William Graham ("Graham"), a neighbor of [Petitioner], saw [Petitioner] running across the yard and went to [Petitioner's] home. [Petitioner] was holding the AK-47 machine gun and told Graham that he did not invite the officer to his house. Graham took the AK-47 from [Petitioner] and walked back to his house where he tried to hide the gun. [Petitioner] went to Graham's house, took the AK-47 back from Graham and returned to his home with the gun.

Deputy Beier saw [Petitioner] re-emerge with the AK-47 and he instructed [Petitioner] to get on the ground. [Petitioner] began shooting at Deputy Beier with the AK-47 machine gun. Deputy Beier hid behind a tree and returned fire. [Petitioner] and Deputy Beier exchanged gunfire until one of Deputy Beier's rounds struck [Petitioner], fracturing his neck. Deputy Beier was not shot during the incident. After the shooting, twenty-nine spent shell casings from the AK-47 machine gun were found in the area of the shooting.

(Doc. No. 7-8 at 2-3)

Petitioner was charged with assault on a law enforcement officer in the first degree, armed criminal action, domestic assault in the second degree, and unlawful possession of a weapon. At trial, the State presented several witnesses, including Henry Reusche and William Graham, two of Petitioner's neighbors. Reusche testified he was home when he heard an AK-47 fired, a sound he recognized based on his ten years of experience in the Air Force. He was unable to identify the type of weapon firing the shots fired thereafter. (Doc. No. 7-1 at 174). Reusche also testified that "[Petitioner] had a look on his face as if he was going to do whatever he had to do and no one better stand in the way, He had a look as if he had lost control of himself with no thoughts of consequence." (Id. at 177-78). Petitioner presented testimony of another neighbor, Donna Mischanco. She testified she was at home during the incident and heard a loud

2

boom and what sounded like firecrackers. Petitioner did not testify in his own defense.

At the instruction conference, the trial court noted that Petitioner had chosen not to testify and that trial counsel had not requested an instruction with respect to Petitioner's right not to testify. (Doc. No. 7-2 at 322) Petitioner's counsel indicated that he had chosen not to offer that instruction because he did not want to highlight to the jury that Petitioner did not testify. (Id.) The trial court approved "the not giving of that [instruction] under these circumstances" (id.), and did not include it among its instructions to the jury.

The jury found Petitioner guilty on all four counts. The trial court sentenced Petitioner to life imprisonment for assault on a law enforcement officer, seventy-five years for armed criminal action, and seven years for unlawful possession of a firearm to run consecutive to one another and concurrent to a sentence of four years for domestic assault in the second degree.

Petitioner raised two points on direct appeal: (1) the trial court erred in admitting testimony from Henry Ruesche (Petitioner's neighbor) regarding Petitioner's facial expression at the time of the incident; and (2) the trial court erred when it responded to a question by the jury during deliberations regarding Petitioner's eligibility for parole. (Doc. No. 7-8 at 2) The appellate court affirmed Petitioner's judgment and sentence, finding on the challenge to Ruesche's testimony that any error was harmless, and on the challenge to the response to the jury that Petitioner had waived appellate review of that issue. State v. Place, 327 S.W.3d 627 (Mo. Ct. App. 2010).

On March 31, 2011, Petitioner filed his pro se motion for post-conviction relief, which was amended by appointed counsel on July 11, 2011. In his amended motion, Petitioner alleged, among other claims, that his trial counsel was ineffective by inducing him to waive his right to testify by informing him that he did not need to testify because the jury would be instructed that

3

it could not use this fact as evidence of his guilt or draw any inference from it. Petitioner also attached his pro se post-conviction motion, in which he alleged his trial counsel was ineffective for failing to investigate and call as witnesses Sam Mischanco and Harold Glamann to testify they heard gunshots before hearing "rapid fire." Petitioner contends this testimony would have supported his theory that Deputy Beier fired first, entitling him to a self-defense instruction.[2]

The motion court held an evidentiary hearing on November 1, 2013, at which Mischanco, Glamman, Petitioner's trial counsel, and Petitioner all testified. Mischanco, Petitioner's neighbor and Donna Mischanco's husband[3], testified he did not see the incident, but heard the gunshots. He stated he heard a big bang, two more singular bangs, and then a sound like firecrackers or rapid fire. He did not see Petitioner or observe the direction of the sounds. (Doc. No. 7-9 at 5-6) Glamann testified he was at a party at his brother-in-law's home across the street from Petitioner's home. (Doc. No. 7-9 at 10) He stated he heard individual shots, like "somebody was target shooting" followed by an "automatic burst" of several shots, (id. at 11), and then two or three last shots (id. at 12). He did not know whether the last shots were different than the first shots. Nor was he able to determine where the sounds originated. (Id.)

Trial counsel testified that he obtained Petitioner's file after Petitioner had been charged and some discovery conducted. He could not recall whether he had contacted Sam Mischanco or Harold Glamann, nor could he recall whether Petitioner had instructed him to contact any specific individual. Trial counsel stated that Donna Mischanco's testimony was the most favorable to Petitioner for the order of the shots fired and the quality of the testimony. Trial

---

[2] Petitioner asserted 13 independent claims in his pro se motion to vacate, set aside, or correct the judgment or sentence. (Doc. No. 7-10 at 13-15). Only two of those original claims are relevant to this habeas petition.

[3] As stated previously, Donna Mischanco was called as a defense witness.

4

counsel recalled discussing with Petitioner the right to testify, his recommendation against testifying, the jury instruction that may be submitted regarding a defendant's failure to testify, and trial counsel's practice of not submitting that instruction because it might highlight to the jury that a defendant did not testify. (Doc. No. 7-9 at 49-54) Trial counsel did not recall Petitioner ever requesting that instruction be submitted to the jury. (Id. at 52-54) Trial counsel stated that based upon the testimony he heard from Mischanco and Glamann at the evidentiary hearing, he did not think their testimony would have been helpful to a jury.

Petitioner testified that he specifically directed trial counsel to contact individuals who might have heard the gunshots, including individuals at the party attended by Glamann. Petitioner further testified that he wanted to testify at trial, but when his counsel told him he would ask that the jury be instructed that they could not hold his decision not to testify against him, he decided that he wouldn't testify.

On November 4, 2013, the motion court denied Petitioner's post-conviction motion. The motion court found that given the contrast between the inconclusive nature of the other "sound witnesses" (Mischanco and Glamann) testimony and the testimony of the State's witness Ruesche, with his superior experience with the sound of weapons, a self-defense instruction would not have been warranted. Thus, trial counsel's failure to call these witnesses to testify for the defense was reasonable trial strategy. (Id. at 35) The motion court further found the decision not to request an instruction regarding a defendant's right not to testify was clearly a matter of trial strategy. (Id. at 36) The Missouri Court of Appeals for the Eastern District affirmed the circuit court's denial of the motion. Place v. State, 458 S.W.3d 345 (Mo. Ct. App. 2014).

On July 24, 2015, Petitioner filed the instant § 2254 Petition raising four grounds for

5

relief: two alleging trial court error and two alleging ineffective assistance of counsel.[4] Respondent argues that both claims of trial court error (Grounds 1 and 2) involve matters of state law and are thus outside the scope of a federal habeas petition. Respondent also argues that Ground 2 is not properly before this Court because Petitioner failed to properly preserve this claim in state court. Respondent argues that on Ground 3, the state courts reasonably found trial counsel did not promise Petitioner that the trial court would give an instruction on his right to remain silent and that trial counsel's decision not to request that instruction was trial strategy that was within the range of professional competence. Respondent argues that on Ground 4, the state courts reasonably found the proposed testimony from the additional witnesses would not have created a reasonable probability of a different verdict as that testimony was minimal and cumulative to other testimony presented. For a similar reason, counsel was not incompetent for failing to call these additional witnesses.

## II.    Standard of review

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995).

---

[4] Respondent has also addressed Petitioner's argument that his sentence was unreasonable although it was not raised as a separate claim for relief. (Doc. No. 7 at 3 n.4, 38-39) In his Traverse, Petitioner clarifies that the reference made to the excessive sentence he received is in "the conclusionary statement of the Attachment five, and should not be considered as a [sic] independent ground or a claim for relief." (Doc. No. 11 at 7)

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." Cagle v. Norris, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003)). A State court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. 362, 407 (2000). A State court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." Ryan v. Clarke, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A State court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that State court factual findings lack

evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); Wood, 558 U.S. at 293.

## III. Procedural default

"Ordinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." Arnold v. Dormire, 675 F.3d 1082, 1086–87 (8th Cir. 2012) (quotations and citations omitted). "In Missouri, a claim must be presented at each step of the judicial process in order to avoid default." Id. at 1087 (quotation and citation omitted). A petitioner must have "fairly presented the substance of the claim to the state courts . . . thereby affording such courts fair opportunity to apply controlling legal principles to the facts bearing upon [the] claim." Wemark v. Iowa, 322 F.3d 1018, 1020–21 (8th Cir. 2003) (quotations and citations omitted). "A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts which he is attempting to raise in his federal habeas petition." Id. at 1021 (quotations and citations omitted). A § 2254 applicant's failure to raise a claim in state court results in procedural default. See Wooten v. Norris, 578 F.3d 767, 777 (8th Cir. 2009).

"When a habeas petitioner defaults his federal claims in state court . . . federal habeas review of his claims is barred unless he 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" Morgan v. Javois, 744 F.3d 535, 538 (8th Cir. 2013) (quoting Coleman v. Thompson, 501 U.S. 722, 750–51 (1991), *cert. denied*, 134 S. Ct. 1882 (2014)). "Cause must be something external to the petitioner, something that cannot fairly be attributed to him." Arnold, 675 F.3d at 1087 (quotation and

8

citations omitted). To establish actual prejudice, the petitioner "must show that the errors of which he complains 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). To establish that a fundamental miscarriage of justice would result, the petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." Murphy v. King, 652 F.3d 845, 850 (8th Cir. 2011) (quotation and citation omitted).

### IV. Discussion

### A. Trial court errors

### (1) Ground 1

In Ground 1 Petitioner contends the trial court erred in overruling his counsel's objection to the testimony of State's witness Henry Ruesche regarding Petitioner's facial expressions. When asked how Petitioner looked at the time of the incident, Ruesche referred to his military background and training in describing Petitioner as "somebody who has lost control of themselves." (Doc. No. 7-1 at 176-177) Specifically, Ruesche testified that "[Petitioner] had a look [on] his face that he had totally lost it. He had this look, I am going to do whatever I am going to do, nobody stands in the middle of it, and whatever happens, happens, with no consequences, no careful consequences." (Id. at 177-178) Petitioner's trial counsel objected to this testimony as calling for speculation; the trial court overruled the objection. (Id. at 177) On appeal, Petitioner argued there was no foundation for Ruesche's testimony because he lacked the expertise to relate Petitioner's facial expression to his state of mind.

It is not within a federal habeas court's province "to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding

9

whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). Only when the "evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process" will the ruling justify habeas corpus relief. Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006). "To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial, i.e., that absent the alleged impropriety the verdict probably would have been different." Gee v. Groose, 110 F.3d 1346, 1350 (8th Cir. 1997) (en banc); see also Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998). A federal habeas court may only overturn a state court's evidentiary ruling "if the state court decision was 'objectively unreasonable.'" Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam) (quoting Renico v. Lett, 599 U.S. 766, 773 (2010)); accord Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam) (quoting Cavazos, 565 U.S. at 2).

Here, the Court cannot say that the trial court's evidentiary ruling was unreasonable. In any event, the trial court's ruling, affirmed on appeal, did not infringe upon any constitutional protection and was not so prejudicial as to amount to a denial of due process. The appellate court found that even if the trial court improperly admitted Ruesche's testimony, the testimony was not outcome-determinative given the overwhelming evidence supporting Petitioner's conviction. (Doc. No. 7-8 at 6-7) Petitioner's wife testified that he punched her, slammed her head against the dashboard of their vehicle twice, and choked her until she lost consciousness. She also testified that Petitioner had at least three weapons and a bullet-proof vest before Deputy Beier arrived at the home. In addition, multiple witnesses saw Petitioner in possession of weapons that night and Ruesche testified he heard gunshots from Petitioner's AK-47 machine gun before hearing gunshots from Deputy Beier's shotgun. It is uncontested that Petitioner shot at Deputy

10

Beier and there was no evidence indicating Deputy Beier fired his weapon first as suggested by Petitioner at trial. Therefore, there is no reasonable probability that the exclusion of Ruesche's testimony would have changed the outcome of trial. The Court will deny Ground 1.

**(2) Ground 2**

In Ground 2, Petitioner argues the trial court erred in responding to the jury's request for clarification of his eligibility for parole instead of allowing them to be guided by the instructions they had been given. While deliberating the sentence, the jury sent two notes to the trial court. The first note read:

> On Count 1 does Life Imprisonment mean the individual [will] be incarcerated without parole or will he be available for parole after how many years?

After conferring with counsel from both sides, the trial court sent the following response:

> Only on a First Degree Murder Charge under Missouri law, is there a sentence of Life without eligibility for Parole. On all other Life sentences, Parole is in the discretion of the Board of Probation and Parole. On the charge of Assault of a Law Enforcement Officer in the First Degree, the Defendant must serve 85% of whatever sentence is imposed. For this purpose it is my understanding that the Parole Board considers "Life" as 30 years.

(Doc. No. 7-2 at 374-77)

The second note sent by the jury read, "[w]hat is the parole guideline for Count 2?" Before a response to this question was sent to the jury, the following exchange took place on the record:

> [THE COURT]: I am actually going to respond to three and four before they bother to ask those questions. You have seen, both of you, my proposed response, do either of you wish to make any objection or comment for the record?
>
> [APPELLANT'S COUNSEL]: I do not, Your Honor.
>
> [RESPONDENT'S COUNSEL]: No, Your Honor.

The trial court then sent the following response:

11

> The minimum for eligibility on Count 2 is three years. There is no minimum time for eligibility for Parole on Counts 3 & 4.

(Id. at 377)

Respondent argues Ground 2 is procedurally barred because Petitioner only raised it as a claim of plain error on direct appeal; the appellate court declined plain error review because Petitioner waived appellate review of the issue by stating he had no objection to the trial court's proposed response to the jury's question. (Doc. No. 7-8 at 16-17) The Eighth Circuit has applied the principle urged by Respondent: "Because the state court refused to review for plain error, we are procedurally barred from reviewing this claim." Johnston v. Bowersox, 119 F. Supp. 2d 971, 979 (E.D. Mo. 2000), aff'd sub nom. Johnston v. Luebbers, 288 F.3d 1048 (8th Cir. 2002) (quoting Bittick v. Nixon, No. 98-3729, slip op. at 4, 1999 WL 641133 (8th Cir. Aug. 24, 1999), citing Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir. 1997)).[5] Petitioner therefore fails to establish a right to relief on Ground 2.

**B. Ineffective assistance of counsel**

**(1) Ground 3**

In Ground 3, Petitioner asserts his trial counsel was ineffective by inducing him to waive his right to testify by informing him that the jury would be instructed that it could not consider his not testifying in determining his guilt, and then not requesting the instruction. A criminal defendant has a federal constitutional right to testify on his own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 51–53 (1987). The defendant "has the ultimate authority to make certain fundamental decisions regarding the case, [including] whether to . . . testify in his or her own

---

[5] This conclusion is based on the current state of the law in the Eighth Circuit as noted in Hornbuckle, namely that where the state court *does* conduct plain error review, the federal habeas court may choose between enforcing the procedural bar and reviewing the claim under the same limited plain error standard applied by the state court. Where the state court *declines* to conduct plain error review of a defaulted point, the procedural bar must remain intact.

behalf." Jones v. Barnes, 463 U.S. 745, 751 (1983). "Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right." United States v. Bernloehr, 833 F.2d 749, 751 (8th Cir. 1987). A defendant's waiver of the right to testify must be made voluntarily and knowingly. Frey v. Schuetzle, 151 F.3d 893, 898 (8th Cir. 1998). See also Berkovitz v. Minnesota, 505 F.3d 827, 828 (8th Cir. 2007) ("Only the defendant may waive her right to testify, and the waiver must be made voluntarily and knowingly.").

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." Id. at 687; see also Paulson v. Newton Corr. Facility, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." Id. at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

When, as here, an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (citation

omitted). "So long as the state court's decision was not 'contrary to' clearly established law, the remaining question under the 'unreasonable application' clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect." Id. "This standard was meant to be difficult to meet, and even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (internal quotation marks omitted).

In denying Petitioner's claim, the motion court found Petitioner's testimony that he waived his right to testify because trial counsel told him the court would instruct the jury regarding his right to refrain from testifying was not credible. When asked when he found out that the right not to testify instruction wasn't given, Petitioner said about a year later when he read the trial transcript. However, the motion court noted that Petitioner was in the courtroom when the instructions were read to the jury and should have known that the right not to testify instruction was not part of them. (Doc. No. 7-10 at 36) The motion court further found that trial counsel's "decision not to request the right not to testify instruction was clearly a matter of trial strategy . . . for a clearly stated reason, which was approved by the Trial Judge." (Id.)

In reviewing this claim on appeal, the Missouri Court of Appeals deferred to the motion court's credibility assessment of Petitioner and his trial counsel, stating:

> At the evidentiary hearing, trial counsel testified that he discussed with Movant his right to testify and informed Movant that the decision was "his and his alone." He stated that after his discussions with Movant, Movant "felt that he shouldn't" testify. Trial counsel explained to Movant that the trial court could instruct the jury not to hold against him his decision not to testify but told him that "it's my practice not to [request that instruction], because I think it highlights it to the jury." Trial counsel recalled that Movant "seemed to be in agreement with what I was saying" and never asked trial counsel to request the instruction. Trial counsel denied telling Movant that he would request the instruction.
>
> Movant also provided testimony about his decision not to testify. Movant explained that he "absolutely wanted to testify" but waived his right to do so after speaking to trial counsel. He stated that trial counsel told him that the trial court would instruct the jury

that it could not draw adverse inferences from his decision not to testify and that Movant did not need to testify because the State had not proved its case. Movant also testified that trial counsel told him that he would request the jury instruction regarding his decision not to testify.

Faced with conflicting testimony regarding Movant and trial counsel's discussion about Movant's right to testify, the motion court had to determine each witness' credibility and the weight to be given the testimony. . . In its judgment, the motion court rejected Movant's explanation that he waived his right to testify based on trial counsel's assurance that the jury would be instructed not to consider his lack of testimony, explaining that "[w]hen asked when he found out that the right not to testify instruction wasn't given[,] [Movant] said about a year later…. In point of fact, Movant was in the Courtroom when the Court read the instructions to the jury and that instruction was not one of them." The motion court also stated that because, during the instruction conference, trial counsel explicitly stated he did not wish to offer an instruction on Movant's right not to testify, the court did "not believe that [Movant's] version of the conversation with his attorney is accurate." The court determined that "[Movant's] testimony with regard to this issue is not credible" . . . We defer to the motion court's superior opportunity to judge the credibility of witnesses.

(Doc. No. 7-14 at 6-7)

The appellate court's decision did not involve an unreasonable determination of the facts presented in state court, nor did it represent an unreasonable application of Strickland or any other federal law to the facts of this case. As discussed above, the record contains ample factual support for the state court's conclusion that Petitioner's testimony on this issue was not credible and that trial counsel had a valid strategic reason for not requesting the instruction. Thus, Petitioner has not shown that his trial counsel's performance was deficient or that he suffered any prejudice on account of counsel's assistance regarding his right to testify. Ground 3 will be denied.

### (2) Ground 4

In Ground 4, Petitioner asserts his trial counsel was ineffective for failing to investigate and call as defense witnesses Sam Mischanco and Harold Glamann. He contends their testimony would have supported the defense theories of lack of intent and self-defense. The decision not to

call a witness is "virtually unchallengeable" as a matter of trial strategy. Rodela–Aguilar v. United States, 596 F.3d 457, 464 (8th Cir. 2010) (internal citation and quotation marks omitted). However, failing to interview witnesses or discover mitigating evidence may be a basis for finding counsel ineffective within the meaning of the Sixth Amendment right to counsel if the petitioner can "make a substantial showing that, but for counsel's failure to interview . . . the witnesses in question, there is a reasonable probability that the result of his trial would have been different." Kramer v. Kemna, 21 F.3d 305, 309 (8th Cir. 1994). For the following reasons, Petitioner has not made the substantial showing required of him in this case.

In denying Petitioner's claim, the motion court noted "this is one of those cases where Movant's trial counsel had very little to work with." (Doc. No. 7-10 at 32) Both Mischanco and Glamann testified they heard the sounds of gunshots; however, neither one saw the incident, and their testimony at the evidentiary hearing offered no indication that Deputy Beier fired the first shots. The motion court stated:

> The inconclusive nature of [Mischanco and Glamann]'s testimony contrasted with the testimony of the State's witness Ruesche, with his superior experience with the sound of the weapons would not, in this Court's judgment have warranted a self-defense instruction. Thus Movant's Trial Counsel's failure to have called such witnesses was a matter of sound trial strategy and therefore cannot convict him of ineffectiveness.

(Id. at 33)

In reviewing this claim on appeal, the Missouri Court of Appeals stated:

> The record supports the motion court's finding that Mr. Mischanco's and Mr. Glamann's testimony "about the sounds they heard [did] not support Movant's theory that the Deputy fired first." The only testimony that Mr. Mischanco and Mr. Glamann offered was that they heard two "bangs" or "shots" followed by "rapid fire" or an "automatic burst." Neither offered testimony distinguishing the sounds as shotgun shots or AK-47 shots, and neither testified that he saw whether Movant or Deputy Beier fired first. "If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance."

(Doc. No. 7-14 at 9-10)

16

Under the instant facts, it cannot be said that Petitioner was prejudiced by counsel's failure to call Mischanco and Glamann. As found by the motion court and appellate court, they were "sound" witnesses who merely heard shots, but did not see who fired them. Moreover, because neither witness could clearly identify who fired first, it is unlikely their testimony would have yielded a different outcome.[6] Furthermore, the Missouri Court of Appeals applied the Strickland standard, and Petitioner has failed to demonstrate that such application was unreasonable. The decision was well based on law and fact and was not "contrary to" nor involved an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1). Finally, Petitioner has not shown that the state determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). Ground 4 will be denied.

V.     **Conclusion**

Upon careful consideration, the Court determines that Petitioner has not shown an entitlement to habeas relief on any of the grounds asserted in his petition.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Jeffrey Place's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [1] is **DENIED.**

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).

A separate judgment will accompany this Memorandum and Order.

---

[6] Arguably, the testimony of Mischanco and Glamann would have been "merely cumulative" of the testimony already offered by Donna Mischanco as to what she heard the night of the incident.

Dated this 26th of September, 2018.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**